HARRY FINKS, RESPONDENT, v. VIKING REFRIGERATORS, INC., APPELLANT.—147 S. W. (2d) 124.

Kansas City Court of Appeals. January 6, 1941.

*David R. Derge* for appellant.

*Allan R. Browne; Wm. L. Bridges* and *Edwin Mills* for respondent.

SHAIN, P. J.—This is a suit on an implied breach of warranty. It appears that plaintiff being in the market for a refrigerated meat show case for his grocery store in Eldorado Springs, Missouri, made contact with a Mr. Taylor of the Associated Grocers Association in Kansas City, Missouri, who recommended that he purchase a Viking Refrigerator. Contact was had by calling the Viking Refrigerator Company over the telephone and a Mr. Hadley came out in response to the call and negotiations resulted in a purchase. The refrigerator was duly delivered to plaintiff and installed in his store in Eldorado Springs. Plaintiff's suit is based upon an alleged failure of the refrigerator to properly function.

The petition of plaintiff upon which case was tried is as follows:

"Plaintiff states that defendants are corporations duly organized and existing according to law.

"For cause of action against defendants, plaintiff states that on or about October 16, 1937, he purchased a Viking Electric Refrigerator with attachments for commercial use which was manufactured by defendants and sold to plaintiff by defendants for use by the public and by and to plaintiff for the same. He further states that defendants impliedly warranted that said machinery was satisfactory and was suitable for its intended use as a refrigerator; that said equipment was of intricate construction so that plaintiff was ignorant of the detailed construction thereof and defendants were the sole parties who had and who could have knowledge thereof.

"Plaintiff further states that said refrigerator was not suitable for its intended use in that it did not defrost and did not keep merchandise cooled properly and allowed said merchandise to spoil; that as a direct result of said breach of said implied warranty by defendant, plaintiff lost the sum of $632.94 in loss of profits and in repairs, an additional sum of $50, and in spoilage, the sum of $100, and the reasonable market value of said refrigerator was $471 less than the sales price, and was damaged in said amounts.

"Plaintiff further states that demand has been made for reimbursement and that defendants refuse to pay said amount.

"Wherefore, plaintiff prays judgment against defendants in the sum of $1,264.64, and for his costs."

Defendant answered by general denial and trial was had before a jury. There was a jury verdict in favor of plaintiff and damage assessed by the jury at $500. Judgment was in conformity with verdict and defendant duly appealed.

For uniformity, we will continue to refer to respondent as plaintiff and to appellant as defendant.

Defendant makes assignments of error as follows:

## "I.

"The court erred in refusing, at the close of all the evidence, to give the instruction offered by the defendant directing the jury to return verdict for the defendant because:

"(a)  There was not sufficient evidence offered by plaintiff to show a contractual relationship between him and the defendant.

"(b)  Assuming a presumption was raised by plaintiff's evidence of such contractual relationship, it was entirely overcome by defendant's positive testimony and there was nothing to go to the jury.

## ·"II.·

"The court erred in giving to the jury, over defendant's objection and exception, plaintiff's instruction numbered 2, in that said instruction permitted the jury to find damages for the plaintiff based on insufficient evidence as to value and for alleged loss of profits in his business where there was no definite evidence of such loss of profits."

Defendant's first claim of error is based (a) on the general rule that no recovery for damages on warranty of fitness of chattels sold can be had without privity of contract and second (b) that presumptions are overcome by positive testimony.

As propositions of law, both claims are sound. The first proposition is definitely upheld by this court in an opinion by BLAND, J., in DeGouveia v. H. D. Lee Mercantile Co. et al., 100 S. W. (2d) 336.

In the aforesaid case, this court held that a wholesale company was not liable in damages for injury arising from consumption of a can of salmon purchased by plaintiff from a retail merchant for reason that there was no privity of contract between plaintiff and wholesaler.

The second proposition also presents a sound statement of law and was applied in Ross v. St. Louis Dairy Co., 98 S. W. (2d) 717. In the aforesaid case, a presumption of ownership of an automobile, arising from name of the dairy company appearing thereon, was declared to be overcome by direct and unequivocal contrary evidence.

To determine as to whether or not the above fundamental principles have application to the situation presented in the case at bar, the evidence must be reviewed in its most favorable inferences to plaintiff.

As to proposition (a), *supra,* it appears that after plaintiff connected with the personnel of the Associated Grocers, the following questions and answers reveal what occurred in Kansas City, Missouri:

"Q. Then what was done with reference to calling someone? A. I contacted Mr. Walter Taylor there, he is the field representative, and he suggested the Viking Refrigerating Company to me and he immediately called or had one of the girls call the Viking refrigerator salesroom.

"MR. DERGE: I object to the statement of the witness that somebody called the Viking refrigerator salesroom.

"THE COURT: Let it be stricken.

"Q. (MR. BROWNE): Did he look it up in the book? A. He looked it up in the phone book and discovered the Viking location.

"Q. Did you see that in the book Viking Refrigerators, Inc.? A. Yes, sir.

"Q. And what address? A. I did.

"Q. What address were they listed in that book? A. There was one at seven hundred something Delaware and the other one was at 7500 Wilson, I believe it is.

"Q. Did a man come out then, did Mr. Hadley? A. Yes, sir.

"MR. DERGE: I object to his leading questions.

"MR. BROWNE: It is preliminary.

"Q. When a man did come out what did you do? A. We talked about meat cases to Mr. Hadley and he brought us to the down town sales office.

"MR. DERGE: I object to that description, 'down town sales office,' That is a conclusion.

"Q. Brought us down to 704 Delaware.

"Q. (MR. BROWNE): Since it is a controverted matter, we will call this 704 Delaware. A. He brought us down to 704 Delaware.

"Q. 704 Delaware? A. Yes, sir.

"Q. I will ask you whether or not on the front of that store you saw the words 'Viking Refrigerators' up there? A. Yes, sir, they were.

"Q. And you were in the store or not? A. Yes, sir, I went in.

"Q. Were you able to find or see there the kind of refrigerated show case you wanted? A. No. He had a few on display but not the type I was interested in.

"Q. You wanted how big a one? A. I wanted an eight-foot case.

"Q. Then what did Mr. Hadley suggest and what did you do? A. Hadley suggested that we go out to the Viking Refrigerating plant and look over their selection there. They had a wide variety on display.

"Q. What did you do? A. We immediately did that.

"Q. How did you go out? A. We went out in my own car. I think Hadley went in his car.

"Q. Who was with you? A. Mrs. Finks and the baby.

"Q. Was the name 'Olson Brothers' or 'Olson Distributing Company' or anything about Olson ever mentioned to you in this deal? A. No, sir.

"Q. Then when you got out to the Viking Refrigerators, Inc., out at their factory, as you call it, what did you do? A. We were shown around the plant by Mr. Corbin and he . . .

"Q. (Interrupting): He is the secretary? A. That is what I understand, he is secretary, and he showed us the cases and told us about their merits and explained at some length how they operated and the results that you could expect from them.

"Q. State whether or not you told him the purpose you wanted a box for? A. I told him what we wanted and what we wanted in the case and he outlined the cases in such a way that they appealed to us.

"Q. And that was which case? A. That was an eight-foot V-96.

"Q. You say 'we.' Who was there besides Mr. Corbin, the secretary of the Viking Company? A. Hadley was with us and Mrs. Finks was in the Viking plant at that time.

"Q. Where did you go from there? A. From there we came back down town to 704 Delaware.

"Q. And what did you pay down there and just tell what you did? A. At that time we gave Mr. Hadley a check for $100 and also for $11 for sales tax and agreed to give a check for the balance upon delivery of the machine in Eldorado Springs.

"Q. Now that check was all in one check, was it not? A. $111.

"Q. It was $111 check? A. That is right.

"Q. And that check was payable to what concern? A. That was payable to B. G. Olson, I believe."

The evidence discloses that a Mr. Nichols, an employee of defendant, delivered the refrigerator plaintiff, conveying same in defendant's truck.

Nichols delivered to plaintiff a statement as follows:

"Kansas City, Missouri, 10/16/37

"H. F. Finks,

"Eldorado Springs, Mo.

"Bought of

"Viking Refrigerators, Inc.

"Office: 7500 Wilson Avenue.  Phone: Chestnut 1515

"Cash due on delivery    $461.70

"*Should the top on case that has bulge in it prove not satisfactory will replace top any time within one year.*

"R. L. HADLEY

"Paid by check 10-18-37

"Viking Refrig. Inc.

"George E. Nichols"

Plaintiff testifies that the underscored words above were written in by Mr. Hadley.

The check given in payment is as follows:

"Brownington, Mo. 10-18-37 No.————

"State Bank of Brownington 80-906

"Pay to the order of Viking Refrigerators, Inc. $461.70

"Four hundred sixty-one & 70/100 dollars.

"For ————————————————

"H. F. FINKS, JR."

The check has the following endorsement, to-wit:

"Commerce Trust Co. Pay any bank, banker or order. Oct. 18, '37. All prior endorsements guaranteed. Commerce Trust Co., Kansas City, Missouri'; Pay Commerce Trust Co., 2210 Kansas City, Mo., or order 2210. Previous endorsements guaranteed. Viking Refrigerators, Inc."

There is evidence to the effect that defendant paid rent on salesroom at 704 Delaware Street and also paid for listing of telephone in its name at said place, and also paid for advertisement of Viking refrigerators, Inc., appearing in the telephone directory.

What we have outlined above, we conclude to be the facts in evidence which plaintiff contends show privity of contract between plaintiff and defendant.

The defendant produced evidence to the effect that B. G. Olson, whose place of business was 704 Delaware Street and designated as "Viking Distributor," merely had a franchise agreement with defendant for a limited territory and that Olson, as such distributor made the sale direct to plaintiff.

The contract between Olson and defendant appears in evidence and the first five paragraphs appear as follows:

"The Distributor shall (and shall have the right to) sell and take orders for all styles of new Viking Refrigerators, display cases, butcher coolers, etc., as may be manufactured by the Company, but only in the manner and to the extent and under the conditions, terms and restrictions hereinafter provided.

"First: The Distributor has the Franchise to sell Viking Refrigerators, as shown in the Company catalogs, in the following territory "Greater Kansas City (including cities of Kansas City, Mo., Kansas City, Kansas, Independence, Missouri, Lees Summit, Missouri) Johnson, Wyandotte, and Leavenworth counties in the state of Kansas, and the southern part of Platte and Clay counties in the state of Missouri, also Jackson County, in the state of Missouri.

"If at any time in the opinion of the Company the territory is not being adequately covered by the Distributor, the Company may change the boundaries of such territory as it may see fit."

The contract provides for sale to Distributor at list price less

50 per cent and prohibts handling of competitive line unless by special agreement.

The fourth provision of the contract reads as follows:

"Fourth: The terms of Sale under this agreement are to be in accordance with the Finance Plan submitted by Viking Refrigerators, Inc., to the Distributor."

Clause Five of an Addenda reads as follows:

"(5) In reference to out-of-town customers; it is understood that the Kansas City Distributor is to 'phone the factory office whenever he finds that a prospect in his salesroom is from a territory other than that covered by this franchise agreement, to find out if the prospect is from an open or closed territory. If the prospect is from a closed territory the factory reserves the privilege of selling the prospect direct in order to protect the distributor in the restricted territory. If prospect is from an open territory, arrangement will be made so the Kansas City Distributor may have the opportunity of securing the order."

The defendant's charge book appears in evidence and shows the apparatus involved as sold to Olson Distributing Company, at a listed total of $903.40; with a 50 per cent discount, $451.70; and showing a balance of $451.70 net cash. There is a notation on the entry as follows: "For resale. For: H. F. Finks, Edler's Grocery, Eldorado Springs, Mo." The entry shows a charge of "Delivery our Truck, $7.50."

Mr. Hadley was placed upon the stand by defendant and testified that he was in the employ of Mr. Olson and that he had no connection with and was not an employe of defendant, and was in no manner under defendant's direction or control.

In consideration of defendant's contention (b), we have set forth somewhat fully defendant's testimony.

The word "presumptions" sometimes brings confusion, in that strictly speaking "presumptions," as relating to burden of evidence or proof, are rules of law and when used in such sense, the "presumptions" go out when the evidence comes in. However, the term "presumptions" is often used in connection with facts proven and are referred to as "presumptions of fact." In other words, "presumptions of fact" is used with a meaning equivalent to the expression "inferences from evidence." When used in such sense, a "presumption of fact" is an inference naturally drawn by process of reasoning as the logical and probable conclusion from proven fact or facts.

In an opinion by the St. Louis Court of Appeals, 121 S. W. (2d) l. c. 265, it is said:

"A presumption of fact is a mere inference naturally and logically drawn as a probable consequence from one or more proven facts. The presumption is justified but not compelled. It may or may not be drawn as the jury may determine. It is never destroyed or put

to flight by evidence on behalf of him against whom it operates. It is the exclusive province of the jury to draw the presumption and give it effect, or not, as they see fit."

In our further consideration of the issue presented herein, we prefer to use the term "inference" in the sense of a permissible deduction from evidence, and we will proceed upon the theory that reasonable inference drawn from affirmative facts proven constitutes evidence. [Hardwick v. Wabash R. Co., 168 S. W. 328, 181 Mo. App. 156.]

The evidence in this case clearly shows that plaintiff, an out-state citizen, came to Kansas City, Missouri, to consult with representatives of the Associated Grocers concerning purchase of a refrigerator case. It is further shown that the Viking Company was listed in the telephone book, and place designated as 704 Delaware Street. Upon calling on the telephone and receiving response, Mr. Hadley came out to the Associated Grocers place of business and began negotiations to sell plaintiff a Viking refrigerator. It is further shown that plaintiff was conducted to 704 Delaware by Mr. Hadley where plaintiff met Mr. Olson and thereafter was conducted by Mr. Hadley to the manufacturing plant of Viking Refrigerators, Inc., the defendants herein.

Plaintiff testifies that after arriving at defendant's plant, plaintiff contacted a Mr. Corbin, Secretary of defendant company, and told him what he wanted. It further appears that Mr. Corbin told of the merits of a case he showed plaintiff, and outlined the case in such a way that it appealed to plaintiff. Plaintiff then and there selected the case and returned to 704 Delaware and gave a check to Mr. Olson in part down payment.

In connection with above, there is evidence to the effect that defendant paid for the listing in the phone book and also paid the rent on 704 Delaware Street.

It is further shown by the evidence that defendant delivered the case in its truck and that defendant's agent at the same time delivered to plaintiff a statement of account for balance due on the case. Said statement of account made direct from defendant to plaintiff contained the statement "Bought of Viking Refrigerators, Inc."

The further fact appears that plaintiff in his check for balance due made check payable direct to defendant in accordance with defendant's statement and said check was cashed by defendant.

We conclude that the above presents such affirmative facts in evidence as to justify the jury in drawing inference that there was a contractual relationship between plaintiff and defendant touching the purchase of the merchandise in issue. In other words, to conclude that there was evidence sufficient to raise issue of fact as to privity of contract.

In reaching the above conclusion, it can also be considered that the sale to plaintiff was not even in the territory that is listed in the

contract offered by defendant as being in the contract with the Olson company, and consideration must be given to provision 5, *supra,* of the contract and evidence wherein there is a provision for defendant selling direct. The evidence in this case does not disclose as to whether or not Eldorado Springs was in open or occupied territory.

From a careful examination of the record, we find neither fact nor circumstance in evidence from which plaintiff could have concluded that he was buying from anyone else than from defendant.

We conclude that defendant's specification II, (a) and (b) is not well taken and that, therefore, no error in refusal of directed verdict for defendant.

Defendant's second claim of error is as to plaintiff's instruction No. 2. The instruction complained of reads as follows:

"2"

"If you find the issues for the plaintiff and against the defendant, Viking Refrigerators, Inc., as elsewhere mentioned in these instructions, you may assess his damages, if any, at such sum, if any, as you may find will fairly and reasonably compensate him, if so, for the difference, if any, between the sale price of the refrigerator and the actual reasonable market value of the article sold, in an amount, if any, not to exceed $471.70, and you may further find for plaintiff for the reasonable loss, if any, to plaintiff in reasonable profits, if any, in an amount, if any, not to exceed the sum of $632.94, as mentioned in evidence.

"By naming these amounts the court does not mean that you should find for plaintiff in these amounts or any amounts, but merely mentions the amounts beyond which you cannot go."

The defendant urges that, as it is admitted that the refrigerator was of value and was retained and used by plaintiff, damages, if any, are limited to difference in actual value and sales price.

The question of allowing special damages, such as profits and loss of business when the purchased article is retained and used, presents a perplexing question wherein judicial utterances are of but little value when being applied to situations different in character from the facts presented in the case in which the utterences appear.

Defendant cites Anglo-American Mill Co. v. Twin City M. & Mfs. Co., 225 Mo. App. 329, 35 S. W. (2d) 983.

In the above case, l. c. 337, the following judicial announcement appears:

"This record conclusively shows that the defendant kept and used the machinery and by so doing the defendant's own evidence shows that the machinery was not entirely worthless, but was worth something to defendant, therefore the defendant was not entitled to the absolute release of its liability, but was at most only entitled to the

difference between the purchase price and the machinery value as shown actually to be.''

When we consider the issue and the facts and circumstances in the case, *supra,* we find direct application of what we have said, *supra,* about confusion.

In the above case, the seller was suing the buyer for the balance of the purchase price for machinery sold. The buyer had retained and used the machinery and admitted same was of some value. The buyer filed counterclaim based upon warranty in which he asked to recover by way of damages for the payment made and for freight charges.

The language, *supra,* when applied to the situation presented but means that the buyer, who retained and admitted value, could not sue for his down payment to be returned, but must base his damages as measured to amount between actual value and purchase value. The issue as presented in the case being reviewed by us was not in the Yardley case.

In our research, we find language in an opinion by the St. Louis Court of Appeals (Saxony Mills v. Huck, 208 S. W. 868), that appears to support the defendant's contention as applied to the facts in the case at bar.

In the above case, the defendant, a baker, by way of counterclaim was asking damages based upon warranty for loss of business due to defective flour purchased from plaintiff. It appears that defendant had used the flour in his baking when he knew of its defects. The appellate court held that by using with knowledge defeated plea for special damages.

In the course of its opinion in the above case, the court justified its conclusion by comment of out-state opinions as follows:

''As we held in the case of Hitchcock v. Hunt, 28 Conn. 343, wherein a quantity of pork had been sold with a warranty that the barrels would not leak: The barrels did leak, and the pork was spoiled but it was shown that the vendee knew of the commencement of the leakage and took no measures to avoid injury to the pork. It was held that the loss of the pork was due to the vendee's own fault, and he could not recover for it, but only for the difference in the value of the barrels.''

''Again, in Draper v. Sweet, 66 Barb. (N. Y.) 145, which was a case of warranty, it was held that when the defects in property purchased are ascertained, 'yet the purchaser persists in using it, whereby losses and expenses are incurred, he does it in his own wrong, and the law will not aid him in recovering any such demands.' ''

The facts in the Draper v. Sweet, *supra,* case are as follows: The purchase was for steel that the seller knew was to be used in making oil drills. The steel was defective for such purpose, still the buyer

used same and undertook to collect damages for failure of warranty for loss in profits.

In the case at bar, plaintiff purchased the case for a specific purpose. The defendant knew of the purpose for which it was bought. The case was set up on Sunday and the plaintiff testifies that he, with reference to checking results and in ascertaining as to whether the box performed, took frequent inventories of the meats and figured percentage of gross margins of profits, and that the first showed fairly good, and that the ones after the first showed a very short gross margin of profit. It is fair to conclude from the evidence that plaintiff shortly after the installment of the case made tests and found that the refrigerator would not perform the functions for which it was purchased for the reason that it would not maintain a temperature between 38 and 40 degrees as required and as represented to plaintiff and that meat would dry out, turn dark and depreciate the worth of same.

In this State special damages are allowed where failure to deliver articles purchased cause damages to purchaser. The outstanding case on failure to deliver is Minneapolis v. Bradford, 227 S. W. 628, wherein it is held that the failure to deliver equipment for threshers occasioned loss of profits on contracts that were lost as a result.

The case at bar is clearly distinguished from the Minneapolis v. Bradford case. We conclude that plaintiff herein by using the refrigerator case, for the purpose for which same was purchased, after it was discovered to be unfit for that purpose did so in his own wrong and is precluded from recovering special damages for loss of profits and spoilage from and after such discovery.

For reasons stated, we conclude that plaintiff's instruction two is in error.

We are not holding that if the plaintiff can show any special loss prior to discovery of unfitness for purpose for which purchased, that recovery cannot be had therefor. However, we do hold that loss of profits based upon experiences in other localities as to reasonable profits of a like kind of store, or loss of profits based upon calculations of volume of trade generally wherein there are divergent influences affecting same are too speculative to be permissible. [50 Corpur Juris, 1. c. 646.]

In this case the question of liability was determined in the trial court in favor of plaintiff and as to such determination we find no error. Under such situation we follow procedure in Culley v. Kansas City, 48 S. W. (2d) 25, and Borgstede v. G. H. Wetteran & Sons Grocery Co., 116 S. W. (2d) 179, so as to avoid unnecessary retrial of said issue.

Judgment reversed on sole ground of error in instruction on measure of damages and cause is remanded for retrial on the question of amount of damages only; the verdict as to liability to stand in force until amount of damages are ascertained, and that then final judgment disposing of the whole case be entered. All concur.