# FRANK GABAL v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**Division One, June 17, 1913.**

1. **NEGLIGENCE: Switch Yard Car Repairer: Humanitarian Rule.** The measure of duty which a railroad company, in the movement of its engines and cars, owes to car repairer, at work in a switch yard, whose very purpose is the continuous moving of cars back and forth, with which he is thoroughly familiar, is not such as is due a passenger or stranger. Upon him is imposed the duty to look out for himself, and that imposed duty justifies the engineer in charge of a yard engine in believing that the car repairer, though in a position of danger on the "lead" track, continually being used by the switching crew, will, upon the approach of cars, step to one side and avert the danger of being struck. In such case the humanitarian rule cannot be invoked upon the engineer's mere seeing of the car repairer in a dangerous position, but can only be invoked from the time the engineer sees that he is not going to protect himself by taking the step or two aside necessary to his safety. Where the engineer, immediately after he discovered the car repairer was oblivious to the danger and was not going to take that sep, used every means at his command to avert injuring him, there can be no recovery.

2. ————: ————: ————: **Distances and Speed.** Where the cars were only 70 feet from the car repairer, when, busy at his work, he was seen by the engineer to move out of a place of safety onto the track on which the train was moving backward at the rate of six miles an hour, or less than nine feet a second, and the engineer immediately sounded the whistle and applied the brakes, there being no air-brakes, the injuries of the car repairer are to be attributed to his own contributory negligence.

3. ————: ————: ————: **Failing to See Sooner: Not Submitted.** Where defendant did not at the trial, by his instructions, submit his case upon the theory that defendant's engineer was negligent in failing to see him in a position of danger when to look was to see, he cannot be heard on appeal to contend that the track was straight for a half mile and the engineer could have seen him in time to have averted the injury, although the petition charged that the engineer saw, or by the exercise of ordinary care might have seen, plaintiff's perilous position. in time to have prevented the accident. Besides, this rule does not apply in its strictness to an employee in a switch yard.

251 Mo.—17·

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*W. F. Evans* and *Cowherd, Ingraham, Durham & Morse* for appellant.

(1) Under the pleadings and evidence in this case the judgment should be for defendant. The court should have so instructed. the jury. Degonia v. Railroad, 224 Mo. 564; Vandyke v. Railroad, 230 Mo. 259; Sissel v. Railroad, 214 Mo. 515; Evans v. Railroad, 178 Mo. 517; Cahill v. Railroad, 205 Mo. 393; Brock-schmidt v. Railroad, 205 Mo. 435; Sharp v. Railroad, 161 Mo. 214; Moore v. Railroad, 166 Mo. 513; Davies v. Railroad, 159 Mo. 1; Hitz v. Railroad, 152 Mo. App. 687; Clancy v. Railroad, 192 Mo. 615; King v. Railroad, 211 Mo. 1; Mockowick v. Railroad, 196 Mo. 550; Walker v. Railroad, 193 Mo. 453; Holwerson v. Railroad, 157 Mo. 216; Nivert v. Railroad, 232 Mo. 626. (2) Plaintiff's instruction 1 is erroneous for the following reasons: (a) There is no evidence that plaintiff was going along unaware of the approach of the train and would enter upon or too near the track in front of the train. Guger v. Railroad, 174 Mo. 350; Boyd v. Railroad, 105 Mo. 371; Schmidt v. Railroad, 191 Mo. 215. (b) There is no evidence and could be none that plaintiff would not turn around or stop before going into a place of danger, where he was struck. Boyd v. Railroad, 105 Mo. 371; VanBach v. Railroad, 171 Mo. 346; Koegel v. Railroad, 181 Mo. 379. (c) In the absence of such evidence defendant had the right to rely upon the presumption that plaintiff would remain in a safe position and would not get upon or too near the track. This instruction does not accord defendant this right. Tanner v. Railroad, 161 Mo. 497; Helm v. Railroad, 193 Mo. 223; Guger v. Railroad, 174 Mo. 344; Evans

v. Railroad, 178 Mo. 508. (3) Plaintiff's instruction number 2 is erroneous because it is not based upon any evidence. (a) All testimony upon the point showed that the defendant's trainmen did everything they could to stop the train after they saw plaintiff in danger, and the train was stopped in the shortest possible time. (b) Defendant had the right to presume plaintiff would step out of the way of the approaching train in the absence of some showing that he was unconscious of his peril. In plaintiff's evidence there is no such showing. In defendant's evidence it was shown that plaintiff stooped over and immediately thereafter the trainmen did everything possible to stop the train, and stopped it as quickly as could be done.

*Strother & Campbell* and *Reed & Harvey* for respondent.

(1) It is conceded that if the uncontradicted evidence shows that Gabal was injured because he suddenly stepped upon or so close to the track from a position of safety at a time too late for the foreman in charge of the train in question to stop it or slow it down and thereby avoid striking him, we have no case. While as our decisions declare, the last-chance doctrine is not enforced with the same rigor that obtains in the case of a stranger, where the life of an employee is at stake, nevertheless, unless much good law made by the Supreme Court is set aside, it is not yet allowable to kill or maim an unobserving yard or track employee without warning when the warning might save him, or without reasonable effort to stop the train when this course might be effective. (2) No case cited by appellant under point one is upon its facts, like this one; it being conceded from all of the evidence that no warning whatever was given by the foreman in charge of this train, either by whistle or bell, before the cars were practically upon Gabal and his companion. Un-

der all of the Missouri cases like this one, the question of defendant's negligence was for the jury, because: (a)    The fireman-engineer and the switch foreman saw that plaintiff was moving with his back toward the train, engaged in the arduous labor of pushing a heavy load upon a truck; that he was absorbed in his work; that he was coming along a path dangerously near the track and must, of necessity, follow this same path because of impediments in and near the path; that at No. 5 switch, he had such a clear space of approximately only four feet for his truck and could not go around the ball and switch stand. (b)    Despite the situation in which plaintiff had placed himself upon reaching No. 5 switch, which situation the trainmen saw, nevertheless, the train was permitted to run seventy-four feet (two car-lengths) before a stop signal was given; if the train was going at the minimum rate testified to by any witness, this permitted the fireman-engineer to pursue a policy of masterly inactivity for a period of about eighteen seconds during which time the ringing of the bell or the screaming of the whistle might have saved Gabal. If, with watch in hand, one by actual test determines what can be done in this length of time, this statement will receive its full need of potency. (c)    Although some of the defendant's witnesses testified that Gabal suddenly changed his relative position to the oncoming train by stepping over the rail, nevertheless, plaintiff himself and his co-worker, Cook, testified to the contrary, as did two of appellant's witnesses; namely, the switch foreman, Reidy, and the engineer, Moore. The four witnesses last referred to testified that plaintiff was going, when struck, just as he had been going all of the time. This, with the other facts, raised a question for the jury. The following cases declare the law applicable to the case at bar: Degonia v. Railroad, 224 Mo. 564; Rashall v. Railroad, 249 Mo. 509; Dutcher v. Railroad, 241 Mo. 137; Heinzeman v. Railroad, 199

Mo. 56; Lynch v. Railroad, 208 Mo. 34; Sullivan v. Railroad, 97 Mo. 119; Kelly v. Railroad, 95 Mo. 279; Schlereth v. Railroad, 115 Mo. 101. (3) This is not a case where defendant's servants in charge of the train had the right to assume that these men would quickly step aside from the danger zone: 1st, Because those in charge of the train knew that respondent was oblivious to his surroundings and was not aware of the approach of danger; and, 2nd, the employees of defendant, operating the train, saw the respondent in his position of peril in time to have prevented striking plaintiff. (4) The engineer testified that he saw these men at No. 5 switch. The nearest car to them in his train was approximately two hundred feet away. If Gabal and Cook are to be believed, and this was for the jury, they were not on the track, but walking forward with their load so near to the track as necessarily to be struck unless the train was checked or stopped. It was for the jury to say under the last chance doctrine, whether or not a warning given at this time would have averted the injury. No such warning was given. The train was permitted to run two car-lengths before any effort was made to stop; since the car that caused the injury ran only six or seven feet, according to witness Avis, after running over Gabal, or eight or nine feet, as stated by fireman Moore, it is indisputable that had an effort been made to stop the train when Gabal was first seen in the danger zone, the injury would have been averted.

GRAVES, J.—Action for personal injuries. Verdict and judgment for plaintiff in the sum of $8500, from which judgment the defendant has appealed.

Plaintiff's petition is in two counts. The first pleads divers specific acts of negligence upon the part of the defendant, but inasmuch as the plaintiff by his instructions *nisi* abandoned this count of his petition further note thereof becomes unnecessary. The second

count of the petition proceeds upon the humanitarian
doctrine. This count alleges that the place of acci-
dent was at a place continuously used by pedestrians,
and pleads facts attempting to place the duty upon de-
fendant to be on the lookout for persons at such place.
In other words the theory of the pleader evidently
was that the circumstances of the case were such as
involved that branch of the humanitarian rule, which
permits a recovery where the defendant *saw, or by
the exercise of ordinary care might have seen,* the
perilous position of plaintiff in time to have prevented
the accident. But whilst the petition proceeds upon the
theory that the defendant would be liable for failure
to see the peril of plaintiff, when by the exercise of
ordinary care it might have seen and known such peril,
yet by his instructions the plaintiff abandons that
theory, and presents his case below upon the single
idea that the defendant saw his peril in time to have
averted the injury, but negligently failed to use any
effort to avert it after so seeing such perilous position.
Excluding the instruction upon the measure of dam-
ages and other minor formal instructions, the instruc-
tions asked by plaintiff and given by the court read:

"1. The jury are instructed that if you find that
plaintiff was walking along the track of the defendant,
directly toward the place where he was hurt, and with
his back toward the train of cars, and that he was man-
ifestly approaching a point near No. 5 switch, where
he would be struck by said train, and was manifestly
unaware of the approach of said train, and that the
servants of defendant in charge of said train saw and
knew the position of said plaintiff and the direction
in which he was moving and had good reasons to be-
lieve, as reasonable men, that the plaintiff was un-
aware of the approach of said train, that he would not
turn around or stop but would continue to proceed to
a point where he would be struck by said train, and
after such knowledge and notice, had time, by the exer-

cise of reasonable care and diligence, to have stopped
said train and averted the injury to the plaintiff, and
that they carelessly and negligently failed to do so,
then you may find in favor of the plaintiff, and this is
true even though the plaintiff may have been careless
and negligent in placing himself in a position of dan-
ger.

"2. If you find from the evidence that plaintiff
was at a point near switch number 5, and in a position
where he was in imminent peril of being struck by de-
fendant's train of cars, and that defendant's em-
ployees in charge of said train of cars knew of his peril
of being struck in time to have averted the injury to
plaintiff, and did not, after seeing plaintiff in said
position, have reasonable grounds to believe that plain-
tiff would escape from said perilous position, and if
you further find that said employees, after they knew
the facts aforesaid, if such were the facts, failed to
exercise reasonable care and diligence under the cir-
cumstances to stop said train of cars; that if they had
used such reasonable care and diligence they could
have stopped said train in time to have avoided injur-
ing the plaintiff, and that in failing to stop the same
they were careless and negligent, and that by reason
thereof the plaintiff, Gabal, was struck and his leg was
cut off, then you may find in favor of the plaintiff,
and this is true even though you may believe that Ga-
bal was negligent in being in the place where he was
injured."

Defendant's answer was (1) a general denial, (2)
the usual plea of contributory negligence, and (3) as-
sumption of risk. It will be observed that the case is
much shortened by reason of the theory finally adopted
by plaintiff in the instructions above set out. Defend-
ant urges several errors upon the part of the trial
court, and among them the court's failure to give a per-
emptory instruction for the defendant. These conten-

tions, so far as necessary, will be noted in the course of the opinion. The foregoing outlines the case.

I. Plaintiff is an experienced car repairer, and for some years had worked in one of defendant's switch yards in Kansas City. He was perfectly familiar with the operation of trains, cars, and switch engines in the switch yard. The defendant vehemently urges its demurrer to all the evidence, and a further statement of the facts becomes necessary.

<span style="float:left">Humanitarian Rule: Facts.</span>

In the switch yard was what in railroad parlance is called a "lead." This is a main line of the yard, and is continuously used by the switching crew in shifting cars from one place to another. This "lead" runs north and south, and to the west of it, and running into it, are a number of tracks. To the east of this "lead" was a cinder pathway, the width of which is a disputed question. The spaces between the ties, from end to end of the ties, were filled with cinders, thus placing the pathway and the top of the ties on the same level. To the east of this pathway was a ditch or drain. On the morning of the accident the plaintiff had been directed by his foreman to get a draw-head and put it in a foreign car than standing in the yard. Plaintiff had with him his brother-in-law, Cook. Cook procured a freight truck, about two feet wide, and the two proceeded north on this cinder path until they reached a point where the plaintiff had "spotted" a draw-head suitable for his purpose. This they loaded upon the truck and proceeded south with it, until they reached No. 5 switch stand, when they were run into by some cars which were being backed down the "lead" from north to south, the destination of a part of the cars being this switch track No. 5. Plaintiff says that he and Cook were taking this truck along the cinder path, when he was struck and had his right leg run over and right foot cut off. He says Cook was in front pulling

the truck, and he was behind, with a short board, pushing the truck by having one end of the board against the draw-head upon the truck and the other end against his shoulder.  He also says that the path was only two feet wide at the point of accident, and he was in this path, pushing the truck as above indicated when he was run down and struck. . Cook says that plaintiff's right foot was over the east rail of the track when he noticed him.  The evidence for plaintiff also shows that neither plaintiff nor Cook saw or heard the backing switch engine and cars.  So much for the situation from plaintiff's standpoint.

On the other hand the facts appear thus:  To the north of switch stand No. 5 was switch stand No. 8, at a distance of 177 feet.  At this stand No. 8 were several diverging tracks to the west of the "lead."  Defendant's switching crew had pulled out seven cinder cars from one of these tracks, through switch No. 8, and then pulled them out north such a distance as to have the last car clear the switch and leave the train entirely upon the 'lead."  Upon signal from the switching crew foreman, the engine and seven cars were started backward toward the south.  For. some purpose a stop was made and the engineer left the engine to get a drink of water, and the fireman (an experienced man and very shortly thereafter advanced to the position of engineer) was left in charge of the engine.  Upon a second signal, Moore, the fireman, started backward at the rate of six to eight miles per hour.  He says that he saw plaintiff and Cook when he started backward with his train, but that at that time they were in the clear, and in no position of danger.  He also says that within a car-and-a-half or two car-lengths from them, he again saw them, and at that time he discovered that the draw-head had fallen from the truck and the two men were stooping over trying to replace it, and were then in danger.  That he immediately warned them by whistle and put on his

brakes and did every thing within his power to avoid the collision with them, but to no purpose. Other evidence corroborates this statement. Another witness for the defendant says that the two men were lifting the truck over the iron bàr which connects the switch stand with the rail, and while so doing the plaintiff got upon the track and was injured. It is really immaterial which of the two views of defendant's witnesses is correct. These witnesses were evidently impressed with the idea that the two men were having some trouble with the truck and its load, and had suddenly changed their position from one of safety to one of danger. Whether this cause was the one or the other of the two things stated is utterly immaterial, and one or the other set of the witnesses was mistaken as to the exact cause, but no doubt honestly mistaken. For the defendant it was shown that the cinder path to the west of the rail was from six to eight feet wide at the point of accident, and whilst on the stand the plaintiff was required to go to the yards and measure it and did so. Upon being recalled he said it was something like seven feet, but upon pressure by his counsel claimed that it was not that wide at date of accident. A mass of testimony for defendant showed that there had been no change in the pathway since the accident. It should also be noticed that, if the plaintiff and Cook did change their position from one of safety to one of danger, and this too in front of a moving train, they did so without making any effort to find out whether cars were approaching them on this "lead" track. They also did it with the full knowledge that cars were likely to be run down this track from the north at any moment. In fact the negligence of plaintiff in this regard stands admitted, and in the end the humanitarian doctrine is alone relied upon. Under these facts did plaintiff make a case for the jury? We think not. Our reasons we state in the following paragraph. There are questions in the case which at least

would require the reversal of the judgment and a remanding of the cause, but with the view we have of the case, a discussion of these questions are afield.

II. In seeking the applicable law, the facts must not be overlooked. This was a switch yard, and its very purpose was for the constant and continuous moving of cars back and forth therein. They had to be moved backward as well as forward. Plaintiff was thoroughly familiar with the situation. An employee in such a yard stands upon a somewhat different footing from a passenger or stranger in other cases. No claim is made in this case that the movement of these cars was out of the ordinary. In the course of his work in the yards the duties of plaintiff had called him to this cinder path time and time again. In Aerkfetz v. Humphreys, 145 U. S. 418, a case in fact very similar to the one at bar, Mr. Justice Brewer thus discusses the law:

"Upon these facts we observe that the plaintiff was an employee and, therefore, the measure of duty to him was not such as to a passenger or a stranger. An employee of long experience in that yard, he was familiar with the moving of cars forward and backward by the switch engine. The cars were moved at a slow rate of speed, not greater than that which was customary, and that which was necessary in the making up of trains. For a quarter of a mile east of him there was no obstruction, and by ordinary attention he could have observed the approaching cars. He knew that the switch engine was busy moving cars and making up trains, and that at any minute cars were likely to be moved along the track upon which he was working. With that knowledge he places himself with his face away from the direction from which cars were to be expected, and continues his work without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which

he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of trains. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard, would have made him aware of the approach of the cars and enabled him to step to one side as they moved along the track. It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees who had all the time knowledge of what was to be expected. We see in the facts as discolsed no negligence on the part of the defendants, and if by any means negligence could be imputed to them, surely the plaintiff by his negligent inattention contributed directly to the injury.''

And so it is in the case of all employees belonging to the class to which this plaintiff belonged. Upon such is imposed the duty to look out for themselves, and

Gabal v. Railroad.

this imposed duty licenses the belief upon the part of the operator of the engine that such an employee, although in a place of danger, will upon the approach of the cars, step to one side and avert the danger. In such cases the humanitarian rule cannot be invoked upon the mere seeing of the man in a dangerous position, but can only be invoked from the time that the operator of the engine sees that the man is not going to protect himself, as is usually done in such cases, by taking a step or two to one side. If a different rule prevailed the work in switch yards would be unnecessarily retarded. In the case at bar the fireman says that after he saw and realized that these men were going to remain in a place of danger, he used every means at his command to avert the collision, and this testimony comports with other facts in the case. That the plaintiff and Cook were not over the rail of this "lead" shortly before the collision is shown conclusively by their own testimony. That they had shifted their position to one of extreme hazard is shown by the physical facts of the case. That they had veered from the east to the west in their course is demonstrated by the fact that the right foot of plaintiff (as he walked south according to his evidence) was west of the east rail of the "lead." It had to be west of this rail to be run over and cut off by the wheel of the car. Just when these parties veered off to the west is not clear, but it was between the time the fireman first saw them and the time that he saw them the second time. It was at this second time that he saw the peril of the men and gave the warning whistle and set his brakes. He had but sixty odd feet in which to do all this, and his train was running six to eight miles per hour and no air on the cars. The testimony shows not to exceed two car-lengths to be the distance at which he discovered the peril. Call this distance seventy feet. Say he was running only six miles per hour, the most favorable to plaintiff, and what is the situation?

There was seventy feet to be covered. The warnings were to be given and the appliances to stop the train were to be put in operation. At six miles per hour the train covered 528 feet per minute or 8 2-3 feet per second. Dividing seventy feet, the distance to be covered, by 8 2-3, we have a small fraction over eight seconds in which to save a man from a perilous position of his own making. In such a case we have held that the plaintiff must attribute his injuries to his own contributory negligence. [Degonia v. Railroad, 224 Mo. 1. c. 596 and 599; Burge v. Railroad, 244 Mo. 76.] In the Degonia case the engineer had ten seconds in which to act, and we thus said:

"As we view the weight of authority in this State, plaintiff is precluded from a recovery herein because of the negligence of deceased, and as we view the law and the facts the humanitarian rule in none of its phases has a place in the case."

The language of Mr. Justice BREWER in the Aerkfetz case, supra, has been approved by this court in Cahill v. Railroad, 205 Mo. 408, and in the Degonia case, supra.

It is, however, urged that the track was straight for a half mile and the engineer could have seen the plaintiff in time to have averted the injury. In this contention learned counsel for plaintiff overlook two things: (1) that they did not submit their case *nisi* upon the theory that there was negligence in failing to see when to look meant to see, and (2) that this rule cannot and does not apply in its strictness to employees in switch yards. As said above the engineer in a switch yard may actually see an employee in a place of danger, yet knowing the duty imposed upon such employee to lookout for his own safety, and knowing that such employees frequently remain in a dangerous position until the cars come very close to them, and then by a step or two reach a place of safety, he can rely upon the presumption that they will protect them-

selves, until such time as he sees that they are actually oblivious to their danger and have no intent upon their part to avert it. The cases upon this point are collected and discussed in the Degonia case, supra. Under that case and the cases in this State and elsewhere upon which it is bottomed, the plaintiff here failed to make a case for the jury, and the demurrer to the evidence should have been given.

The judgment, therefore, should be simply reversed and it is so ordered. All concur.