MARY J. SALSBURY, Plaintiff, v. QUINCY, OMAHA & KANSAS CITY RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, January 5, 1914.

1. NEGLIGENCE: Master and Servant: Alarm: Liability. A section foreman was at work in a railway carrier's switch yards while a freight engine was switching cars. He was on the track bending over picking up bolts and his back was to the approaching engine. As soon as the engineer saw him and that he was oblivious to his danger, he gave a blast of the whistle when the man raised up, turned towards the engine

and then attempted to get out of the way but was struck and killed. It was *held* there was no liability under the humanitarian rule.

2. ——: ——: **Lookout: Peril: Alarm.** As to section men working on the track the railway carrier's servants in charge of the engine need not be on the lookout. They have a right to expect that section men will get out of the way and give them a clear track and are under no duty to sound an alarm until they see the men are in peril and are oblivious to it.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Cooley & Murrell* and *J. E. Rieger* for appellant.

*Campbell & Ellison* and *J. G. Trimble* for respondent.

ELLISON, P. J.—Plaintiff's action is brought by her guardian (she being insane) for killing her husband. The trial court sustained defendant's demurrer to the evidence in plaintiff's behalf.

It appears that deceased was defendant's section foreman and that he was a man of long experience. This action is sought to be sustained on the theory of the humanitarian rule. The section crew under charge of deceased was working in the switch yards at one of defendant's stations. The deceased himself was engaged in picking up broken pieces of angle bars and bolts and piling them. At this time one of defendant's freight engines was doing switching in the yards. In picking up pieces of these bars deceased bent down on the track. While in this position the engine, which had just then switched a car, approached him from behind. The engineer became aware of his peril and his seemingly being oblivious to it, and immediately gave a blast of the whistle, but deceased did not move in time to avoid being struck.

There can be no doubt of the propriety of the court's action in sustaining defendant's demurrer. A railway carrier's servants in charge of its train have a right to expect a clear track and need not be on the lookout, so far as the section men are concerned. It is the duty of these men to avoid the carrier's engines and cars rather than that the carrier should avoid them. For the carrier has a right to expect that they, though on the track, where they mostly work, will step off before being struck; and he only owes a duty when, from the situation, he sees the man is unaware of his peril. What is that duty? It is not to stop the train unless, in some instance, if there be such, where a warning would be useless and yet there is time to stop. His duty is to sound an alarm. He has a right to expect that when that is done a section man, familiar as he is with the operation of the road, will realize his peril and spring to safety. This is a rule stated in Degonia v. Railway Co., 224 Mo. 564, which we do not understand to be questioned by the majority members of the court. To the same effect is Gabal v. Railroad, 251 Mo. 257; Nivert v. Railway Co., 236 Mo. 626; Evans v. Railway Co., 178 Mo. 508 and Hardwicke v. Railway Co., decided by us at this term.

In this case the defendant did just what was not done in the cases of Hinzeman v. Railway Co., 182 Mo. 611 and 199 Mo. 56. There the deceased section man was seen to be oblivious of his peril and yet no whistle sounded until he was struck, while here the blast was given as soon as his peril was discovered. Then, instead of instantly jumping out of the way, he straightened up, turned toward the engine and then attempted to get away. His son was plaintiff's witness. He said that deceased's back was to the train and "My father was bending down picking up bolts. I was looking at him all the time. I was when the whistle blew. I judge the train was sixty or fifty feet from him then. He then raised up and looked towards the

engine and jumped." It is manifest there was not time to stop after it was seen that deceased was not going to succeed in getting out of danger after the warning.

There was other evidence in the case about distances, when and how the switching was done, how it was customarily done, etc.; but the foregoing are the essential facts which control the case. The judgment will be affirmed. All concur.