# S. B. BRIGHTWELL, Respondent, v. JAMES W. LUSK et al., Receivers of the ST. LOUIS and SAN FRANCISCO RAILROAD COMPANY, Appellants.

### Kansas City Court of Appeals, June 12, 1916.

1. **NEGLIGENCE: Railroads: Track Repair.** This is an action for personal injuries founded on the Federal Employers' Liability Act. The plaintiff, while repairing a switch track, stepped out of the way of an approaching switch engine and drag, and a box car on an adjacent track struck him on the shoulder, knocking him down and running over his arm. *Held*, that the injury was a natural result of the negligence and one that the engineer must be presumed to have anticipated as a natural and probable consequence. The relative narrowness of the space between the tracks, the imperative necessity of attracting the engineer's attention which caused plaintiff to move to the best vantage point, and the practice in the yards of running detached cars on the east track without an attendant to give warning, were facts from which the inference of danger to the plaintiff from the probable cooperation of the active ingredients of such situation would and should have been drawn by a reasonably careful person in the position of the engineer.

2. ———: ———: ———: Where an injury cannot reasonably be anticipated and would not have happened unless under exceptional circumstances, it is not negligence to fail to take precautionary measures to prevent it, although if taken, the injury would not have resulted.

3. ———: ———: ———. An engineer of a passing locomotive is entitled to indulge in the presumption of a clear track as to all employees, such as section hands, and track repairers, who are required by the rules of the company to keep out of the way of trains and is not required to be on the lookout for them.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Calvin & Rea* and *George C. Coggburn* for respondent.

*Cowherd, Ingraham, Durham & Morse* for appellants.

JOHNSON, J.—This is an action for personal injuries founded on the Federal Employers' Liability Act. Defendants are the receivers of the St. Louis & San Francisco Railroad Company, an interstate carrier, and at the time of his injury, February 21, 1914, plaintiff was the foreman of a gang of section men employed in repairing a main track in defendants' switch yards in Kansas City. The men were raising low joints in the track and had been thus employed during the day. In this operation they raised the track on jacks which supported it while they removed the soft material and filled the depression with cinders. Then they lowered the track, removed the jacks and passed on to the next low joint. During the afternoon (the injury occurred at 4:30 p. m.) a switch engine working in that part of the yards had been run two or three times over the track where the repairs were being made. This track was called the "middle yard lead" and ran north and south. The engine worked in an area north of the point where the track gang was working but occasionally it ran south on the "lead" over and beyond that point and then back again in a few seconds.

The engineer knew low joints were being raised, that during that operation the track was elevated and supported by track jacks and that it would not be safe to run the engine over such place until the track had been lowered and the jacks removed. Just before the injury the engine approached on that track from the north at a time when the section men were working at a low joint and the track was raised. The engineer introduced as a witness by defendant testified: "I don't know how many times we backed up there, but several times, and this one particular time when he was hurt we were backing up and I did not—was not sure whether the track was clear for us to go back or not, so I kept backing up until I got fairly close enough that I thought we ought to know whether to stop or not, and he (plaintiff) stepped over between the tracks, and I got no signal (from plaintiff to stop) so I whistled."

We quote this testimony at this time because of its corroboration of plaintiff's evidence which tends to show that this is not an instance where the engineer relied upon the presumption of a clear track, but is one where he anticipated the track might be fouled and, therefore, was bound not to proceed without a signal or unless he knew the track was clear. Plaintiff testified, but afterward the testimony was stricken out on motion of defendant, that when the engine first ran over his place of work he said to the engineer, after experiencing difficulty in attracting his attention: "Now, when you are backing up here on this track always watch behind for a signal because I am working right back here," to which the engineer replied, "All right."

In our consideration of the demurrer which defendant insists should have been given, that testimony is omitted. Apart from it, the evidence shows beyond question that this was a place where the engineer, not entitled to indulge in the presumption of a clear track, was bound to keep a lookout for a signal from plaintiff. The evidence of plaintiff tends to show that as the engine approached, tender first, plaintiff crossed over to the east side of the track where the engineer could see him and repeatedly gave the signal to stop. He observed the engineer was looking backward at the "drag" of cars and did not see him. In endeavoring to attract his attention plaintiff reached a spot from ten to fifteen feet north of the low joint and near the west rail of the next track east which was called the "east yard lead." This track ran parallel to the middle yard lead and plaintiff states the distance between them was eight feet which would allow a clear space of nearly four feet in which one might stand while trains were passing each other on the two tracks.

The witnesses for defendants give the distance between the tracks at from ten to fourteen feet. Plaintiff's evidence on this issue is substantial and for the purposes of the demurrer we must assume that the two tracks were eight feet apart. While plaintiff was signalling and shouting to the engineer and, as stated, was near

the east yard lead, a freight car, which another switch engine operating in the east yard had shunted on that track, approached from the south and struck plaintiff on the shoulder, knocked him down and ran over his right arm. There was no switchman on this car and no warning was given of its approach.

The reason plaintiff gives for not looking in the direction of the oncoming car, in substance, is that his duty to signal the engineer to prevent the latter from running the engine over the raised track was imperative and that under the rules observed in the operation of trains and cars in the yards he had no reason to anticipate that a flying switch would be made on the east track. On the other hand the evidence of defendant tends to show that it was the practice to switch cars in that manner without warning and that it was the duty and custom of track men to look out for such movements.

The engineer testified that plaintiff was not trying to signal him but seemed to be looking intently at the track work. He said, "I tooted the whistle two or three times for him to get out of the way or step one way or the other and he stepped over, that is, he came there in front of this box car that was coming down towards the crossover, then I seen that he didn't see this car and so I hollered at him, the time was so short, and the car was so close from him that he did not seem to realize, did not seem to hear me, and did not look up at all, and the car hit him."

The engine was running slowly, not over four or five miles per hour, and was stopped before it reached the track jacks. The petition alleged that the proximate cause of the injury was negligence of the engineer in approaching the track jacks without looking for a stop signal and negligence in running the car along the east track without having an operator thereon to give warning of its approach. In the instructions the court withdrew the latter charge from the jury and authorized a verdict for plaintiff only upon the hypothesis that the alleged negligence of the engineer was a proximate cause of the injury. The answer, in addition to a general denial,

Brightwell v. Lusk et al.

pleaded assumed risk and contributory negligence and the jury were instructed if they found plaintiff was guilty of contributory negligence "he shall not recover the full amount of his damages, which you may find he has sustained, but only the proportional amount bearing the same relation to the full amount of his said damages as the negligence attributable to the defendants bears to the entire negligence attributable to both the plaintiff and the defendants."

The jury returned a verdict for plaintiff in the sum of $5000 and defendants appealed.

In our consideration of the argument that the court should have directed a verdict for the defendants we begin with the premise that in an action under the Federal Employers' Liability Act the defense of contributory negligence can perform no other office than that of diminishing the damages recoverable by the plaintiff and even in cases where such negligence must be treated as established in law the plaintiff will not be deprived of his right to recover the damages the jury finds from the evidence are properly attributable to pleaded negligence of the defendant which also was a proximate and contributing cause of the injury. The Act provides (sec. 3, ch. 149, 35 Stat. at Large U. S., p. 66) "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery but the damages shall be diminished by the jury in proportion to the amount of the negligence attributable to such employee."

Of this provision it is well said in Penn. Co. v. Cole, 214 Fed. 948, that no degree of negligence on the part of an injured servant, however gross or proximate as a matter of law, can bar a recovery, it being impossible that plaintiff's negligence should equal the combined negligence of both plaintiff and defendant. Consequently the sole issue we must solve on this branch of the case is whether or not the evidence in its aspect most favorable to plaintiff accuses the engineer of negligence which either with or without negligence of plaintiff was a proximate cause of the injury. [Hardwick v. Railroad, 181 Mo. App. 156.]

In support of their contention that the engineer, even if he failed to keep a lookout for plaintiff, and instead was looking backward, yet did not violate any duty he owed plaintiff, counsel for defendant invoke the well-settled rule that an engineer of a passing locomotive is entitled to indulge in the presumption of a clear track as to all employees such as section hands and track repairers who are required by the rules of the company to keep out of the way of trains and is not required to be on the lookout for them. [Degonia v. Railroad, 224 Mo. 564; Gabal v. Railroad, 251 Mo. 257; Rashall v. Railroad, 249 Mo. 509; Nivert v. Railroad, 232 Mo. 626; Aerkfetz v. Humphreys, 145 U. S. 418; Witham v. Delano, 184 Mo. App. 677; Salsbury v. Railroad, 175 Mo. App. 334.]

But these cases are in line with the great current of authority which recognizes the sensible doctrine that the presumption of a clear track cannot be allowed to shield the defendant against liability where the act in question did not proceed from such presumption but with knowledge of the actor—the engineer—that the track ahead was not clear and that it was necessary to keep a lookout. As we pointed out in the Hardwick case the rule in question does not mean that the track workers are entirely outside the pale of protection but only that unless there is something in the situation to call for watchfulness and care on the part of the engineer he is not required to anticipate that employees whose business is to keep themselves and their work out of his way, nevertheless, will require his attention. Where, as in the present case, the engineer knows that the track ahead is obstructed by the track men and their operations upon it, in a manner to endanger lives and property if care is not observed, he has no right to indulge in any presumption of a safe track but must advance cautiously keeping a lookout for signals to stop. The engineer in his testimony conceded that such was his duty and asserted that he was in the full performance thereof but that plaintiff was inattentive. Plaintiff's evidence, which we must accept, tends to show that the engineer was not keeping a lookout but was running the engine regardless of warning signals,

towards the defective place.    Clearly the evidence accuses the engineer of a negligent breach of duty towards plaintiff—the duty to keep a lookout for his signal to stop and to obey such signal when given.

But it is argued that the engineer had no reason to anticipate that his negligent breach of such duty would or might result in plaintiff's being struck by a moving car on the parallel track or even that plaintiff might be led thereby into taking a position near that track.    The doctrine is recognized in this State that where an injury cannot reasonably be anticipated and would not have happened unless under exceptional circumstances, it is not negligence to fail to take precautionary measures to prevent it, although if taken the injury would not have resulted.    [Brewing Assn. v. Talbot, 141 Mo. 674; Moore v. Lead Co., 125 Mo. App. l. c. 396; Monday v. Railroad, 136 Mo. App. 696; Foley v. McMahon, 114 Mo. App. 442.]

We think the facts and circumstances in the present case will support a reasonable conclusion that the injury was a natural result of the negligence and, therefore, one that the engineer must be presumed to have anticipated as a natural and probable consequence.    The relative narrowness of the space between the tracks, the imperative necessity of attracting the engineer's attention which caused plaintiff to move to the best vantage point, and the practice in the yards of running detached cars on the east track without an attendant to give warning, were facts from which the inference of danger to plaintiff from the probable cooperation of the active ingredients of such situation would and should have been drawn by a reasonably careful person in the position of the engineer.    The court did not err in refusing to direct a verdict for defendants.

We have carefully considered the objections to the rulings on instructions and find them free from prejudicial error.

We cannot say as a matter of law that the verdict was excessive.    Plaintiff was forty-seven years of age and was earning $55 per month.    He lost his right arm

and has been almost completely incapacitated from earning a livelihood. The questions of whether or not he was guilty of contributory negligence and, if so, to what extent such negligence should be allowed to diminish his damages, were issues of fact which were referred to the jury in proper instructions. We have no right to diminish the recovery on the ground of contributory negligence and in aid of the verdict must assume, if necessary, that the jury exonerated plaintiff from the imputation of negligence. On such hypothesis, an assessment of $5000 for the loss to a workingman in the prime of life of his right arm cannot be considered as transgressing the bounds of the jury's discretion.

The judgment is affirmed. All concur.