THOMAS RIDDELL v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—292 S. W. 710.

Division Two, March 14, 1927.

**1. NEGLIGENCE: Contributory.** A foreman of a switching crew, who steps from a place of safety on the car of a freight train and without looking steps into the space between two tracks, when to look would be to see a train, about on schedule time, approaching within sixty or eighty feet of him, and proceeds, without looking, to take from three to seven steps which bring him to the train, by which he is struck, is guilty of contributory negligence; and if the accident occurs in Illinois and his rights are to be determined by the laws of that State, his contributory negligence bars his recovery.

**2. ———: ———: Switchman: Humanitarian Rule.** If the engineer of defendant's train, rapidly approaching the switching point, sees the foreman of the crew of a terminal switching train, step from a place of safety, the engineer has a right to assume that the foreman will not enter the path

in front of his train, but will be mindful of his own safety, and will not take the few steps that will bring him in front of the engine; and especially so when the train is so close when the foreman leaves his place of safety that it is impossible to stop it before striking him, as he moves rapidly and takes the few steps that bring him in front of the engine. In such case the humanitarian rule cannot be invoked, but it is the duty of the foreman to be mindful of his safety, and not heedlessly and without looking enter upon the track in front of a train which he knows regularly passes about the time he enters the track in front of it.

---

Corpus Juris-Cyc. References: **Railroads,** 33 Cyc., p. 847, n. 22.

Appeal from Circuit Court of City of St. Louis.—*Hon J. Hugo Grimm,* Judge.

REVERSED.

*James F. Green* and *Thomas J. Cole* for appellant.

(1) The court erred in failing and refusing to give defendant's requested instructions in the nature of a demurrer to the evidence. Lovenguth v. City of Bloomington, 71 Ill. 241; Hazel v. Bus Co., 310 Ill. 39; Lake Shore Ry. Co. v. Hession, 150 Ill. 546; North Chicago St. Ry. Co. v. Eldridge, 151 Ill. 542; West Chicago St. Ry. Co. v. Liderman, 187 Ill. 463; Carson, Pirie, Scott & Co. v. Rys. Co., 309 Ill. 346; Chicago Railroad Co. v. Moran, 210 Ill. 9; Bruce v. Mo. Pac. Ry. Co., 271 S. W. 762; Kelsey v. Mo. Pac. Ry. Co., 129 Mo. 362; Gabal v. Railroad, 251 Mo. 257; Lien v. Railroad Co., 79 Mo. App. 475; Van Dyke v. Mo. Pac. Ry. Co., 230 Mo. 259; Keele v. Railroad, 258 Mo. 80; Jennings v. Ry. Co., 243 S. W. 207; Newell v. Dickinson, 233 S. W. 72; Pheasant v. Dir. Gen. of Railroads, 285 Fed. 342. (2) The court committed error in admitting in evidence that the custom of the tower man at Valley Junction was to hold plaintiff's train there until defendant's train had passed; the tower man not being defendant's employee, but being an employee of plaintiff's employer. 27 R. C. L. 197, sec. 42. (3) The court committed error in admitting in evidence the ordinance of the city of East St. Louis, Illinois, requiring bells on engines to be rung continually, since there was no evidence that such was not done and since plaintiff did not testify that he either knew of or relied upon this ordinance. Mockowik v. Railroad, 196 Mo. 550; Hall v. Railways, 240 S. W. 175; Monroe v. Railroad, 297 Mo. 633; Epstein v. Wells, 284 S. W. 847.

*Foristel, Mudd, Hezel & Habenicht* for respondent.

(1)   Whether the plaintiff was or was not guilty of negligence contributing to his injuries was not a question to be determined by the court as a matter of law, but under the circumstances shown in the evidence, the fact that the train which struck the plaintiff was running northwardly upon the southbound track, at an excessive rate of speed, in violation of ·ordinance and without ringing any bell (also in violation of ordinance), and the fact that plaintiff had received a signal from the tower indicating that this train had gone north and that plaintiff had a clear track on the northbound track, made the issue one for the jury, and the court therefore properly overruled the demurrer to the evidence and sent the case to the jury. 3 Elliott on Railroads, sec. 1157; Langan v. Ry. Co., 72 Mo. 392; Crawford v. Stock Yards Co., 215 Mo. 394; Unterlachner v. Wells, 278 S. W. 79; Unrein v. Hide Co., 295 Mo. 353; McDonald v. U. Rys. Co., 211 Mo. App. 149; Curlin v. Ry. Co., 232 S. W. 215; Wack v. Ry. Co., 175 Mo. App. 111; Montgomery v. Mo. Pac., 181 Mo. 477; Edwards v. Railroad, 94 Mo. App. 36; Jennings v. Railroad, 112 Mo. 268; Strauchon v. Ry. Co., 232 Mo. 587; Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 448.   And more particularly is this true on the Illinois decisions.  St. Louis Railroad Co. v. Dunn, 78 Ill. 197; C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 148; T. H. & I. ·Ry. Co. v. Voelker, 129 Ill. 551; Chicago Ry. Co. v. Fennimore, 199 Ill. 17; C. & A. Railroad Co. v. Pearson, 184 Ill. 386; Gibbons v. Railroad Co., 263 Ill. 266; Althoff v. I. C. Railroad Co., 227 Ill. App. 417.
(2)   The testimony of plaintiff and his witnesses, who were at the place of the accident and in a position to hear a bell ringing on the train which struck plaintiff, that they heard no bell, is substantial evidence that no bell was rung, and on a demurrer to the evidence it must, therefore, be considered that no bell was rung.  McCreary v. U. Rys. Co., 221 Mo. 18; Ross v. Davis, 213 Mo. App. 209; Killingsworth v. Ry. Co., 209 S. W. 301; Murray v. Transit Co., 176 Mo. 183; Stotler v. Railroad, 200 Mo. 107; Dutcher v. Railroad, 241 Mo. 167; Murray v. Mo. Pac. Ry. Co., 101 Mo. 242; Hanlan v. Mo. Pac., 104 Mo. 388; Doyle v. Ry. Co., 185 S. W. 1175; Buckry-Ellis v. Railroad, 158 Mo. App. 499.   (3)   The proof that at the time of plaintiff's injury the train which struck and injured him was being run in violation of the ordinances of the city of East St. Louis, pleaded in the petition, made a prima facie case of negligence liability on the part of the defendant.  Schlereth v. Mo. Pac. Ry. Co., 96 Mo. 515.

HIGBEE, C.—The plaintiff, while working as a switchman in the switch yards used by four different railroad companies at East St. Louis, Illinois, was struck and injured by one of the defendant's locomotive engines, and for the injuries so sustained he recovered

judgment in the Circuit Court of the City of St. Louis, Missouri, for damages in the sum of $20,000, and the defendant appealed.

The facts, as stated by appellant's counsel, are:

The plaintiff, Thomas Riddell, on March 24, 1923, was in the employ of the St. Louis Merchants Bridge Terminal Railway Company as foreman of a switching crew. He had been in the same employ and doing the same work and in the same territory since 1920. His work was known as industry switching; that is, placing empty cars in the yards of the industries for them to load and taking out cars which had been loaded. His territory was all in East St. Louis, Illinois, beginning at the Madison Yards, which is in the north part of East St. Louis, and extending south to Valley Junction, which is in the south part of East St. Louis. The tracks over which he operated were owned by the Illinois Transfer Railway Company, but were operated by the St. Louis Merchants Bridge Terminal Railway Company, by which company he was employed.

The crew of which he was the foreman consisted of himself, a fireman, an engineer, a head switchman and a rear switchman. The two switchmen were commonly known as helpers. His position as foreman was a good deal like a conductor on a road train. Plaintiff's crew was composed of the following other men: Freddie Groh, engineer; Joseph Meyers, fireman; Edward Cresap, rear switchmen, and Al Worthem, head switchman.

There were two main lines they worked over with switches to different industries located along those two lines. Those two main lines were parallel, and generally speaking they ran north and south. The main-line track on the west side was commonly known as the southbound track, and the east track was usually and customarily used for northbound traffic.

Plaintiff and his crew commenced work at nine o'clock in the morning, going south on the southbound track, and after completing all switching on the southbound track they started north on the other of the two main-line tracks—the east track. Before entering the northbound track they received a signal giving them the right to do so. This signal was operated by an employee of the St. Louis Merchants Bridge Terminal Railway Company, who was located in a tower at Valley Junction. They then went north to the Terminal Elevator property, which was on the east side of the two main-line tracks, and a switch track led from the northbound track into the yards of the Terminal Elevator Company. Before going into the Terminal Elevator Company's yards they left the cars they were pulling on the main northbound track, and took the engine alone into the elevator yards. They coupled up the eight or ten cars which were on the elevator switch track and started out of the elevator yards. The pilot end of their engine was attached to the cars,

and the tank end was preceding as they came out of the elevator company's switch. Plaintiff was on the fourth or fifth car from the engine as they came out of the switch. He was standing in the stirrup and holding with his hands to the rungs of the ladder on the side of the car. Just about the instant he reached the switch points he stepped off, presumably for the purpose of throwing the switch, so his train could back up on the main track and get the cars they had left there before they entered the elevator switch. At the time plaintiff stepped off the car he was facing north and did not look at any time toward the south. If he had looked south he could have seen a train approaching for a mile, the track being practically straight there for at least a mile.

Plaintiff testified that he did not know what happened after he stepped off; that he did not know whether he took any steps or not, but the testimony of other witnesses, both plaintiff's and defendant's, shows that plaintiff, after alighting, took from three to seven rapid steps to the north and west, which brought him close enough to the west track to be struck by the engine of defendant's train which was then being operated northwardly over the so-called southbound track. When plaintiff stepped off his train the Missouri Pacific engine was then about sixty or eighty feet from him.

The train which struck plaintiff was a regular Missouri Pacific passenger and employee's train, called by railroad men "The Bum." This train and other Missouri Pacific trains, as well as trains of other roads, were regularly operated over the two main line tracks heretofore referred to, and this train was due to pass the point of the accident just about the time it did pass. This was known to plaintiff, as well as to the other members of his crew. The plaintiff also knew that this train which struck him often ran north over the so-called southbound track.

Several doctors testified to the extent of plaintiff's injuries, and the plaintiff also testified on that subject. Briefly, they tended to prove the allegations of the petition in that regard.

Over the objection and exception of defendant's counsel, testimony was introduced to show that the custom of the operator of the tower at Valley Junction was to hold plaintiff's train at Valley Junction until after the "Bum" train had proceeded northwardly, in case plaintiff's train reached Valley Junction at about the time the "Bum" train was due.

One of plaintiff's witnesses estimated the speed at which defendant's train was traveling when it struck plaintiff, at thirty to thirty-five miles per hour. Plaintiff's only other witness on this subject said it was twenty or twenty-five miles per hour. Defendant's witnesses said about ten miles per hour.

At the time of the accident the engine attached to defendant's train was backing up—that is, the tank end was preceding—and plaintiff was struck by the rear end of the tank. Neither the engineer nor the fireman saw the plaintiff, and were not aware of the accident until they were told of it when they stopped at Bond Street.

Plaintiff's witnesses testified they heard a whistle, but did not hear a bell ringing. Defendant's witnesses testified the bell was ringing automatically all the way from Valley Junction to Bond Street. There was a clearance of about four feet and nine inches between the trains.

Respondent's counsel concede that the foregoing statement "fairly covers the vital facts as viewed from appellant's standpoint," but they call attention to portions of the evidence which they deem important.

The petition counts upon the humanitarian doctrine; negligence is averred in running the defendant's train north on the west track at a negligently high rate of speed after plaintiff had received a signal to run north on the east track; that the west track was ordinarily used by southbound trains; that plaintiff was unaware of the movement of defendant's train northward on said west track; that defendant's trainmen saw or by the exercise of ordinary care would have seen plaintiff in a position of peril in time to have avoided striking him, but they negligently failed to warn him or check the speed of the train; that said train was negligently operated at a high rate of speed in excess of ten miles per hour and without sounding the bell or whistle, in violation of certain ordinances pleaded.

The amended answer pleads defendant's contributory negligence in entering upon defendant's track immediately in front of the defendant's oncoming train with his back toward said train, without exercising ordinary care by looking or listening to ascertain if said train was approaching or to avoid being struck by it; that whatever right, if any, plaintiff has to recover damages for his injuries is governed and determined by the law of the State of Illinois as declared by the Supreme Court of that State; that if plaintiff's negligence in failing to exercise ordinary care to discover the approach of defendant's train contributed to his injury, no duty was imposed on the defendant by the law of the State of Illinois to avoid striking the plaintiff and plaintiff's contributory negligence defeats his right to recover damages for such injuries. Various decisions of the Supreme Court of Illinois are pleaded as supporting said contention.

At the trial, plaintiff, over defendant's objection, was permitted to testify as to a custom observed in the switch yards, that is: "If this train (defendant's train) was about due, he (the man in the tower) would hold us in the Moss Tie before he would leave us out; he wouldn't give us no signal; that is the man in the tower wouldn't

give us the right to move, but would stop us before we would get on the northbound track to let the Missouri Pacific 'Bum' train pass.''

In support of the offer of this testimony plaintiff's counsel said: ''He (plaintiff) has to go further than to merely show negligence on the part of defendant, but he has to show that he himself was free from negligence contributing to the injury. I want to show what the usual practice and custom was with 'reference to permitting his train to occupy the northbound track with relation to this Missouri Pacific train, as bearing on the question of whether he should have anticipated in any way this movement of the Missouri Pacific, which was an irregular movement in the sense it was a northbound move- ment on a southbound track.''

Respondent's counsel in their brief and argument concede that if plaintiff got off the car and stepped within the way of the train which struck him without looking back for an approaching train over the south track and if nothing more appeared to excuse such failure to look, it might be contended he was negligent. They argue that the railroad tracks and switching train operated by plaintiff be- longed to the Illinois Transfer Railway, but were operated by the St. Louis Merchants Bridge Terminal Railway Company, and were used by the defendant railway company for the passage of its trains; that as shown by the evidence for plaintiff the man in the tower, as employee of the Merchants Bridge Company, controlled the movement of all trains over those tracks; that when plaintiff was ready to pro- ceed northwardly with his train he was required by the rules gov- erning the movement of trains to await a signal from the tower and be governed by it; that he got a signal from the tower that he had a clear north track; it was the regular time for the Missouri Pacific ''Bum'' train to pass northwardly and plaintiff reasonably under- stood the signal to mean that this train had passed north; that ac- cording to the practice and custom followed in the operation of trains from the tower, ''if the so-called 'Bum' train was about due plain- tiff's train would be held until the 'Bum' train had passed.'' On this state of facts it is argued that whether plaintiff was guilty of contributory negligence was a proper issue for the jury.

The plaintiff, the foreman of a switching crew, had worked con- tinuously in these yards for three years. He knew this Missouri Pacific train was due to pass the point where he was injured at about the time it did pass. He knew it had often used the west track in running north; that it could not use the east track since plaintiff had been directed to take that track. The Missouri Pacific train could have been seen for a mile by plaintiff if he had looked to the south, but he did not look. With this train running, as it is claimed, at from twenty to thirty-five miles per hour, with the engine reversed, plaintiff, without looking to the south, stepped from a place of safety

on the freight car on which he was riding, into the space between the two tracks. If the defendant's engineer had seen plaintiff step from his car to the ground he would have had the right to assume plaintiff would not enter the path in front of defendant's train, but that he would be mindful of his own safety. However, the evidence offered on behalf of plaintiff is that, without looking to the south, plaintiff walked rapidly to the northwest directly into the path of peril and sustained his injuries. The speed of defendant's train and the fact that it was within sixty to eighty feet of plaintiff when he stepped to the ground, made it impossible for the defendant's trainmen to avoid the unfortunate collision even if plaintiff's peril had been seen and his obliviousness thereof had been realized.

In Hazel v. Bus Company, 310 Ill. l. c. 45-46, decided in 1924, the rule is stated as follows: ". . . It has been the theory of the common law in every such case that the contributory negligence of the person suffering the damages is a complete defense to the person negligently causing the injury. In every such case the party who by his own negligence has contributed materially to his injury is left remediless by the common law for the reason universally recognized where that system of law prevails, that no man may recover damages for an injury to himself or his property which he himself was a material instrument in causing."

In Chicago & Wilmington Railroad Co. v. Moran, 210 Ill. l. c. 17, the Supreme Court of Illinois said: "Nothing short of a willful act or willful or intentional neglect of duty will authorize a recovery by a plaintiff guilty of negligence contributing to the injury complained of."

Other similar rulings of that court were pleaded and read in evidence.

There is no evidence tending to prove negligence on the part of the defendant in the operation of its train other than excessive speed and failure to sound the bell or whistle, if such evidence tends to prove negligence in this case. There is no force in the contention that plaintiff was misled by the signal he received from the man in the tower to believe there would be no northbound train on the west track. Even if that were true the negligence of the signal man could not be attributed to the defendant. But plaintiff testified that the signal which he received to proceed north on the east track meant that that track was clear, and he further testified, as heretofore stated, that northbound trains often used the west track. The contention that, in the circumstances of this case, the question of the plaintiff's contributory negligence was for the jury is devoid of merit.

In Gabal v. St. Louis & San Francisco Railroad Co., 251 Mo. 357, 158 S. W. 12, the plaintiff was an experienced car repairer and had

worked for years in one of the defendant's switch yards in Kansas City. On page 288, Judge Graves quoted from Aerkfetz v. Humphreys, 145 U. S. 418: " '. . . We see in the facts as disclosed no negligence on the part of the defendants, and if by any means negligence could be imputed to them, surely the plaintiff by his negligent inattention contributed directly to the injury.' "

Judge Graves then continues: "And so it is in the case of all employees belonging to the class to which this plaintiff belonged. Upon such is the duty to look out for themselves, and this imposed duty licenses the belief upon the part of the operator of the engine that such employee, although in a place of danger, will, upon the approach of the cars, step to one side and avert the danger. In such cases the humanitarian rule cannot be invoked upon the mere seeing of the man in a dangerous position, but can only be invoked from the time that the operator of the engine sees that the man is not going to protect himself, as is usually done in such cases, by taking a step or two to one side."

In the recent case of Bruce v. Missouri Pac. Railroad Co., 271 S. W. 762, we had occasion to consider the question of the contributory negligence of an employee in an action for damages for personal injuries sustained in a switchyard. Our conclusion is well expressed in the syllabus as follows: "An employee of a railroad terminal company, struck by railroad company's passenger train backing into station, held within rule that railroad may presume that employees will look out for themselves, thus absolving it from keeping lookout, and, where such employee walked in front of approaching train without seeing or hearing it, there being no obstructions, his failure to exercise reasonable care was proximate cause of his injury."

From these considerations it results that the judgment must be and is reversed. *Davis, C.,* concurs.

PER CURIAM:—The foregoing opinion by Higbee, C., is adopted as the opinion of the court. All of the judges concur.